**In re Mary Louise JAMES f/k/a Mary Louise Merrifield, Debtor.**

**Bankruptcy No. 180–00075.**

United States Bankruptcy Court, D. Maine.

Oct. 31, 1980.

---

**74**

Bruce R. Livingston, Augusta, Maine, for debtor.

Robert S. Hark, Isaacson, Isaacson & Hark, Lewiston, Maine, for creditor.

## MEMORANDUM OPINION

CONRAD K. CYR, Bankruptcy Judge.

The debtor moves the court, pursuant to Bankruptcy Code § 522(f), for an order avoiding the lien of New England Furniture Company [New England] on certain household furnishings claimed exempt under Bankruptcy Code § 522(b)(1), (d)(3) & (5).

According to the agreed statement of facts, on August 19, 1978 the debtor purchased a bedroom set, a dinette set and a living room set from New England, contemporaneously executing a purchase–money security agreement and promissory note. The debtor returned the living room set on September 27, 1978, at which time she was provided with two "credit memos," one representing the entire purchase price of the living room set, the other the unearned finance charge. On the same day, the debtor purchased a second bedroom set, and executed another security agreement and promissory note in favor of New England. The bedroom set and dinette set purchased on August 19 were not listed as collateral on the September 27 security agreement. The $645.08 balance remaining due from the August 19 transaction was consolidated with the new debt incurred on September 27. The new promissory note called for 24 monthly payments of $65.00 and a final payment of $14.20, for a total of $1,514.20. The debtor paid $291.00 between October 6, 1978 and March 14, 1980, the date of bankruptcy.

There is no dispute and the court concludes that New England retained a purchase–money security interest in the bedroom and living room sets acquired by the debtor on August 19.

The issue of perfection is not addressed by either party. Since possession of the collateral was in the debtor and the amount financed [1] on August 19 exceeded $1,000.00, the filing of a financing statement is required for perfection.[2] But the rights of the parties *inter se* are not dependent on perfection. Therefore, the court must address the pending motion to set aside liens, regardless of perfection.

The debtor argues that the consolidation of the August 19 and September 27 indebtednesses deprived the original security in-

---

1. The Maine Consumer Credit Code defines "amount financed" in the case of a sale as the total of the following items:

   A. In the case of a sale, the cash price of the goods, services or interest in land, less the amount of any down payment whether made in cash or in property traded in, and the amount actually paid or to be paid by the seller pursuant to an agreement with the buyer to discharge a security interest in, a lien on, or a debt with respect to, property traded in;

   . . . . .

   C. In the case of a sale or loan, to the extent that payment is deferred and the amount is not otherwise included and is authorized and disclosed to the customer:

    (i) amounts actually paid or to be paid by the creditor for registration, certificate of title, or license fees; and

    (ii) permitted, additional charges, section 2.501.

9-A M.R.S.A. § 1.301(5).

2. Under Maine law, a financing statement need *not be filed in order to perfect a purchase–money* security interest in consumer goods where the amount financed is less than $1,000. *See* 11 M.R.S.A. § 9–302(1)(d).

terest in the bedroom and dinette sets purchased August 19 of its character as a purchase–money security interest.[3] The debtor reasons that the execution of the September 27 promissory note had the effect of satisfying the August 19 indebtedness. The debt having been satisfied upon the execution of the new note, the argument goes, the security interest securing the purchase price was extinguished.

The court is not persuaded. The August 19 purchase price was not satisfied, but consolidated in a new note that remains unsatisfied. The consolidation was undoubtedly intended for the convenience of the parties. There is no evidence that the September 27 transaction was ever intended to affect the August 19 security agreement. The September 27 consolidation constituted an extension of credit, not a satisfaction of debt.[4]

The Maine Consumer Credit Code[5] governs consumer credit transactions made in the state.[6] A consumer credit transaction includes a consumer credit sale or a modification thereof, including a refinancing, consolidation or deferral.[7] The August 19 and September 27 transactions constituted consumer credit sales.[8] The rights of the parties are therefore governed by the applicable provisions of the Maine Consumer Credit Code.

New England properly retained a purchase–money security interest in the goods sold to the debtor.[9] Neither security agreement purported to subject the goods to a security interest other than that securing their price. See *In re Norrell*, 21 UCC Rep. 1185 (M.D.Ga.1977); *In re Brouse*, 6 UCC Rep. 471 (W.D.Mich.1969). See also Gilmore, Security Interests in Personal Property, Vol. II, § 29–2, at 781. The debts were properly consolidated by agreement of the parties,[10] resulting in a single payment schedule.

For purposes of determining what portion of the consolidated indebtedness is secured by each security interest, the Maine Consumer Credit Code provides that payments are deemed to have been first applied toward payment of the debt resulting from the first sale.[11] Security interests terminate as the indebtedness secured by the collateral is satisfied.[12] The debtor paid $291.00 to New England following the consolidation, not enough to satisfy the indebtedness incurred for the purchase of the living room and dinette sets. Accordingly, there remains a purchase–money security interest in the living room and dinette sets, and the court holds that the lien of New England Furniture Company may not be avoided under Bankruptcy Code § 522(f).

The motion for an order avoiding the lien is denied. Enter order.

---

**3.** Although the debtor thus describes her position, in fact she contends that the security interest itself, not merely its character as a purchase–money security interest, was extinguished by virtue of the adjustment in payment terms accomplished by means of the September 27 consolidation.

**4.** "Credit," under the Main Consumer Credit Code, means ". . . the right granted by a creditor to a debtor to defer payment of debt or to incur debt and defer its payment." 9–A M.R.S.A. § 1.301(15).

**5.** *Id.* § 1.101 *et seq.*

**6.** Title 9–A, Maine Revised Statutes Annotated, section 1.201 provides in pertinent part as follows:

1. Except as otherwise provided in this section, the Act applies to consumer credit transactions made in this state. For pur-

poses of this Act, a consumer credit transaction is made in this state if . . . [a] signed writing evidencing the obligation or offer of the consumer is received by the creditor in this state . . . .

The offices of New England Furniture Company are located in Maine.

**7.** 9–A M.R.S.A. § 1.301(12).

**8.** *Id.* § 1.301(11).

**9.** *Id.* § 3.301(1).

**10.** *Id.* § 2.505(2).

**11.** *Id.* § 3.303.

**12.** *Id.*